# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL THORNE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 00-00913-HFS |
| SPRINT/UNITED MANAGEMENT COMPANY, et al., | ) ) ) |
| Defendants. | ) |

## SUGGESTIONS IN SUPPORT OF
## DEFENDANT'S MOTIONS IN LIMINE

**I.  INTRODUCTION**

After the Court's summary judgment ruling, the remaining claims in this case are same sex harassment and retaliation pursuant to both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Missouri Human Rights Acts, Mo. Rev. Stat. § 213.010 et seq. Defendants[1] have filed several Motions in Limine seeking to exclude certain evidence during the trial of this case. These Suggestions address the general subject matter of each of these motions and demonstrate, in greater detail, why Plaintiff and his attorneys should be prohibited from making any arguments or statements regarding these areas and why Plaintiff should not be allowed to proffer any evidence on these subjects.

---

[1] While there are two defendants named in the case, only a single verdict director will be given. The Plaintiff worked for Sprint PCS at the beginning of his employment and became an employee of Sprint/United Management Company during the time at issue in this lawsuit.

1175293.1

## II. ARGUMENTS AND AUTHORITIES

### A. The Court Should Not Allow Plaintiff to Introduce Any "Pattern and Practice" Evidence

Plaintiff's First Amended Complaint alleges that "defendants have a long standing, company wide pattern and practice of condoning sexual harassment and discrimination at all levels, and have policies and practices that cause a disparate impact upon those who complain about sexual harassment." Plaintiff's First Amended Complaint at ¶ 11. In order "[t]o establish a prima facie case of pattern and practice discrimination, a plaintiff must prove that the employer regularly and purposefully . . . treated members of the protected group less favorably and that unlawful discrimination was the employer's 'regular procedure or policy.' Proving isolated or sporadic discriminatory acts by the employer is insufficient . . . rather it must be established by a preponderance of the evidence that . . . discrimination was the company's standard operating procedure–the regular rather than the unusual practice." EEOC v. McDonnell Douglas Corp., 101 F.3d 948, 951 (8th Cir. 1999); Davis v. State of California Dept. of Corrections, 1996 WL 271001, *22 (E.D. Cal. 1996), attached as "Exhibit A," (noting that the term "pattern and practice" is generally reserved for use in a class action suit).

There are no allegations in this case that anyone besides Plaintiff was the victim of sexual harassment-same sex or otherwise. There is also no evidence to suggest a pattern or practice of Sprint "condoning sexual harassment and discrimination," as alleged by Plaintiff. Rather, the uncontroverted evidence establishes that Sprint had multiple policies in place explaining both its policy against sexual harassment and the avenues pursuant to which an employee could report harassment. Indeed, Plaintiff admits that he knew, from all of Sprint's publications and training, how to report a claim of harassment, but chose not to do so for some period of time. After Plaintiff finally reported the alleged harassment, Sprint conducted a detailed investigation into Plaintiff's claims.

Since Plaintiff has no evidence that unlawful discrimination was Sprint's "regular procedure or policy," or that anyone else at Sprint was subject to same-sex harassment, he should not be allowed to misrepresent this case as one involving "pattern and practice" discrimination based solely upon his personal allegations of isolated discriminatory acts.

**B.    The Court Should Not Allow Plaintiff to Introduce Any Evidence Regarding Other Individuals Who Plaintiff Alleges Were Retaliated Against in the Past**

Defendant anticipates that Plaintiff may attempt to introduce evidence regarding other Sprint employees who Plaintiff alleges were subject to retaliation at Sprint. Specifically, Plaintiff testified in his deposition that he understood that it was Sprint's policy not to retaliate against employees but that he did not "believe it" because of "what [he] had seen other people go through." Deposition of Michael Thorne, (hereinafter "Thorne Dep."), p. 128, ll. 12-16, attached hereto as "Exhibit B." Plaintiff could not, however, provide specific information regarding these other individuals who were allegedly the victims of retaliation. Rather, he testified that in 1999 he had a friend "who had a speech impediment" and that he was fired after he complained to Human Resources. Id. at 129, ll. 12-17. Plaintiff admitted, however, that he did not know anything about his friend's performance reviews or "why he was fired." The only other individual who Plaintiff could recall was "retaliated" against by Sprint was a friend of Plaintiff named Jim Mayfield. Id. at p. 130, ll. 6-7. Plaintiff admitted, however, that he was "fuzzy" on the details and did not know why Mr. Mayfield was "skipped over for a job promotion." Id. at p. 130, l. 9 through p. 131, l. 3.

This sketchy "evidence" should be excluded as irrelevant pursuant to Fed. R. Evid. 401 since it does not tend to prove or disprove any facts material to Plaintiff's harassment or retaliation claims. It is also irrelevant because it is too remote in time and does not involve any of the same individuals who are alleged to have harassed or retaliated against Plaintiff in this lawsuit.

### C. The Court Should Not Allow Plaintiff to Introduce Any Evidence Concerning His Allegation That in "1987 or 1988" He Was Told He Would Be Fired or Demoted if He Made Complaints to Human Resources

Defendant anticipates that Plaintiff will attempt to introduce evidence regarding an incident which took place in "1987 or 1988" ("1987 incident"), when he was working for Sprint's long distance division, in which he made a report to Human Resources that a supervisor allegedly grabbed him by the face and told him to look at her when she was talking to him. Thorne Dep., at p. 45, l. 3 through p. 47, l. 6. Plaintiff claims that after he complained about this incident to Human Resources, he was told by his supervisor's manager that he would be fired or demoted if he made any other complaints to Human Resources. Id. at p. 47, ll. 14.

This evidence should be excluded as irrelevant pursuant to Fed. R. Evid. 401 since it does not tend to prove or disprove any facts material to Plaintiff's claims. First, the alleged incident took place over twelve years ago, and therefore, is too remote in time to be relevant. Second, Plaintiff was not employed by Sprint PCS when the alleged incident took place. Rather, he was employed by U.S. Sprint Communications, Co., a different company. Third, Plaintiff admits that he did not believe that there was anything "sexual" about the supervisor touching his face so that it is questionable whether the report constituted "protected activity." Thorne Dep., at p. 46, ll. 15-17. Finally, Plaintiff admits that none of the individuals involved in the 1987 incident are involved in any way with his current complaints of harassment and/or retaliation. Thorne Dep., at p. 45, l. 3 through p. 47, l. 22.

Even if the Court determines, however, that this evidence is relevant it should nevertheless be excluded under Fed. R. Evid. 403 which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." Fed. R. Evid. 403. Introduction of evidence concerning the 1987 Incident would be significantly more prejudicial than probative since Sprint would not be able

to refute Plaintiff's allegations without calling the individuals involved in the 1987 incident. In effect, there would be a mini-trial regarding the 1987 incident. This would unduly lengthen the trial, confuse the issues, and mislead the jury. See U.S. v. LeCompte, 108 F.3d 948 (8th Cir. 1997)(court may exclude evidence to avoid holding "mini-trials on peripherally related or irrelevant matters")(internal citations omitted). Instead of focusing on the issue of whether Plaintiff was discriminated and/or retaliated against because of his gender, the jury would be encumbered in a collateral mini trial. This evidence is also improper under Fed. R. Evid. 403 because it could be used to suggest that Defendant should be found liable not necessarily because it discriminated against Plaintiff based on his gender, but instead because Defendant[2] "mistreated" Plaintiff in the past.

Because of the lack of relevance and prejudicial effect, the Court should prohibit Plaintiff from presenting any evidence concerning his allegation that in "1987 or 1988" he was told that he would be fired or demoted if he made complaints to Human Resources.

### D. The Court Should Exclude Any Evidence Concerning Front Pay or Back Pay Since Plaintiff's Constructive Discharge Claims Were Dismissed

Plaintiff's First Amended Complaint seeks back pay and front pay damages for his alleged constructive discharge from Sprint. In its March 5, 2002 Order, this Court granted Defendants' Motion for Summary Judgment on Plaintiff's constructive discharge claims. Summary Judgment Order at p. 22. The decision that Plaintiff was not forced to resign requires a finding that Plaintiff is not entitled to back pay or front pay as a matter of law. See e.g., Coffman v. Tracker Marine, Inc., 141 F.3d 1241, 1247 (8th Cir. 1998)(since plaintiff was not constructively discharged as a mater of law, plaintiff is not entitled to back pay damages and jury may only award damages for emotional distress and medical treatment); West v. Marion Merrell Dow, 54 F.3d 493, 496, n.1 (8th Cir.

---

[2] Sprint PCS did not even exist in 1987. Plaintiff was not employed by Sprint PCS until 1998–almost ten years after at the 1987 incident.

1995)("The jury was properly instructed that West could not receive damages for wages and benefits after September 30, 1989 [the date of West's resignation letter], unless she had been constructively discharged."). As a result, Plaintiff should not be permitted to introduce any evidence of back pay or front pay.

If the Court does consider the issue of back pay damages, it should find that Plaintiff is not entitled to these damages as a matter of law. A Title VII claimant seeking back pay damages has a duty to mitigate those damages by exercising reasonable diligence to locate other suitable employment and to maintain a suitable job once it is located. Equal Employment Opportunity Commission v. Delight Wholesale, Co., 973 F.2d 664, 670 (8th Cir. 1992). In this case, Plaintiff mitigated his damages by securing a higher paying job at Birch before he resigned from Sprint. Thorne Dep., at p. 76, l. 17 through p.77, l. 10. As a result, Plaintiff is not entitled to an award of back pay damages as a matter of law.

### E. The Court Should Not Allow Plaintiff to Introduce Any Evidence Regarding "Homosexual Rape" Since There Are No Such Allegations in This Case

During the deposition of Dr. William S. Logan, Defendant's expert psychiatrist, Plaintiff's counsel asked Dr. Logan numerous questions regarding the emotional impact of homosexual rape. See Deposition of Dr. William S. Logan, (hereinafter "Logan Dep."), p. 10, ll. 6-10, 16-17; p. 11, ll. 2-6, 13-17, 19-23, attached hereto as "Exhibit C." As a result, Defendant anticipates that Plaintiff or his attorney may attempt to introduce evidence or ask questions concerning the emotional impact of homosexual rape. This "evidence" should be excluded on several grounds.

First, this evidence should be excluded as irrelevant pursuant to Fed. R. Evid. 401 because it does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" since there are no allegations of homosexual rape in this case. Fed. R. Evid. 401. In addition to its lack of relevance, this type of

evidence is also improper under Fed. R. Evid. 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury since the Plaintiff has not alleged any such actions to have occurred in this case.

  F.  **The Court Should Exclude All Evidence Concerning Plaintiff's LINK Rating Being Changed From a "5" to a "4" After Plaintiff's Resignation**

  Defendant anticipates that Plaintiff may attempt to introduce evidence regarding Plaintiff's LINK performance rating being changed in the computer from a "5" to a "4" after Plaintiff's resignation. From a timing standpoint alone, Plaintiff should not be allowed to introduce this evidence since it is uncontroverted that Plaintiff's LINK was not changed until after Plaintiff's resignation from Sprint. As a result, this "evidence" is irrelevant under Fed. R. Evid. 401 because it does not tend to prove or disprove any fact that is of consequence to the determination of Plaintiff's same-sex harassment and/or retaliation claims.

  In fact, Plaintiff was not even aware that his LINK rating had been changed prior to this lawsuit. Thorne Dep., at p. 231, ll. 5-10. This evidence is also irrelevant because it is standard policy at Sprint that individuals who receive either a "4" or a "5" are not eligible for a MIP (discretionary bonus). Deposition of Kimberly Klosak, (hereinafter "Klosak Dep."), at p. 84, ll. 16-21, attached hereto as "Exhibit D." As a result, it makes no difference whether Plaintiff received a "4" or a "5" because under either scenario he was not entitled to a discretionary bonus.

  Since this evidence does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" it should be excluded. Fed. R. Evid. 401. Even if, however, the Court determines that this evidence is relevant, it should nevertheless be excluded under Fed. R. Evid. 403 since its probative value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Plaintiff's allegations in this lawsuit are that he was sexually harassed and retaliated against while he worked at Sprint. Therefore,

introduction of evidence regarding the LINK being changed in the computer after Plaintiff resigned from Sprint (which had no effect on Plaintiff's right to receive a discretionary bonus) would improperly shift the jury's focus from the relevant time frame and true issues in the case.

> **G.** **The Court Should Exclude All Evidence Regarding Defendant's Net Worth Unless and Until the Court Determines That Punitive Damages Will be Submitted to the Jury**

While punitive damages are recoverable under Title VII and the MHRA, net worth information will be relevant only if the Court determines, after hearing the evidence, that submission of punitive damages is appropriate. A number of courts have held that allowing a plaintiff to discuss defendant's net worth during voir dire or opening statements, or allowing evidence of net worth prior to the time that the court reaches a decision as to whether punitive damages will be submitted to the jury, would unduly prejudice the employer. See, e.g., Williams v. Betz Laboratories, Inc., 1996 WL 114815 (E.D. Pa 1996)(court grants defendant's motion precluding plaintiff from mentioning defendant's net worth until determination made that plaintiff had established a legal basis for such a claim since evidence of net worth is relevant only if plaintiff establishes entitlement to punitive damages), attached hereto as "Exhibit E;" Vance v. NutraSweet Co., 1993 WL 394767 (N.D. Ill 1993)(evidence of defendant's net worth in Title VII case excluded until the court had an opportunity to consider defendant's motion for judgment as a matter of law at the close of plaintiff's case), attached hereto as "Exhibit F."

The Court's Summary Judgment Order leaves open the issue of whether punitive damages will be submitted to the jury. Specifically, the Court indicated that it would make the decision of whether to submit punitive damages "based on the trial evidence." Summary Judgment Order, at p. 26. As a result, the jury need consider Defendant's financial condition in this case only if it is asked to consider an award of punitive damages. In the event the Court rules, as Defendant believes is

likely, that Plaintiff has failed to proffer evidence warranting a claim of punitive damages, Defendant will be irreparably harmed by the jury's consideration of this information. As a result, Defendant seeks this Court's In Limine Order prohibiting Plaintiff from mentioning, discussing, or offering any evidence regarding Defendant's net worth until such time as the Court determines that the issue of punitive damages will be submitted to the jury.

      **H.    The Court Should Exclude All Evidence of Bob Brown's Testimony Regarding Brown's Opinion as to Whether Hammond Sexually Harassed Plaintiff**

This Court should exclude all evidence of Bob Brown's testimony regarding Brown's opinion as to whether Hammond sexually harassed Plaintiff as improper opinion testimony under Fed. R. Evid. 701. Federal Rule of Evidence 701 limits opinion testimony by a lay witness to "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Plaintiff's counsel asked Mr. Brown whether he "believed" Plaintiff's allegations. Deposition of Bob Brown, (hereinafter "Brown Dep."), p. 50, ll. 1-11, attached hereto as "Exhibit G." Mr. Brown responded "yes" . . . "I had no reason not to. Perception being reality, if he believed that happened to him, then he must have had a reason for it, and that is why I need to evaluate what was going on . . ." Id. Mr. Brown further testified, however, that he never witnessed anything that led him to believe Plaintiff's allegations; that he never personally conducted an investigation into Plaintiff's allegations; that he was not privy to statements taken by Corporate Security and that he never discussed the issue with Mr. Hammond. Id. at p. 125, l. 11 through p. 126, l. 10. The only reason Brown "believed" what Plaintiff had told him was because Brown had no reasons to disbelieve Plaintiff and had no facts to the contrary. Id. at p. 126, l. 23 through p. 127, l. 4.

As a result, Mr. Brown's opinion regarding whether Plaintiff's allegations were true, to the extent he expressed one, should be excluded under Fed. R. Evid. 701 because Brown's "opinion" is

not "rationally based on his perceptions." See, Wactor v. Spartan Transportation Corp., 27 F.3d 347, 350 (8th Cir. 1994)("in order to conclude that [lay opinion] is admissible, the court must find that the witness' testimony is based upon his or her personal observations and recollection of concrete facts . . .")(internal citations omitted). The determination of whether Plaintiff was sexually harassed by Hammond is the ultimate issue in this case and, therefore, should be left to the jury to decide. See, Harvey v. Wal-Mart Stores, Inc., 33 F.3d 969, 971 (8th Cir. 1994)(lay opinion excluded on the grounds that witness was in no better position to determine ultimate issue in the case than the jury would be after hearing all of the evidence).

### I. The Court Should Exclude All Evidence That Kimberly Klosak Was Acting as Legal Counsel in This Case

Defendant anticipates that Plaintiff may attempt to argue or introduce "evidence" that Kimberly Klosak, Regional Human Resources Manager for Sprint, was acting as legal counsel on Sprint's behalf in this case. This Court should exclude this evidence because there is absolutely no information to support this erroneous allegation. Although Ms. Klosak is an attorney by training, she is employed in Sprint's Human Resources Department and does not act as legal counsel for Sprint as evidenced by the following deposition testimony:

| | |
|---|---|
| Question by Plaintiff's Counsel: | In your capacity as a human relations specialist, when you're speaking to individuals, employees of Sprint, are you acting in the capacity of a lawyer also? |
| Answer by Klosak: | No. Strictly as an HR person. |

Klosak Dep., at p. 36, ll. 15-19.

Since there has been no evidence to the contrary in this lawsuit, the Court should not allow Plaintiff to mislead and confuse the jury with this erroneous information.

### J. The Court Should Exclude All Evidence That Sprint's Legal Counsel or Kimberly Klosak Violated Any Ethical Duties

Plaintiff's counsel has indicated that Plaintiff intends to present "evidence" that Kimberly Klosak, in consultation with Sprint's Legal Department, "manufactured" documents in this case when Plaintiff's LINK rating was changed from a "5" to a "4" in the computer after Plaintiff's resignation. Defendant has filed a motion in limine to exclude evidence regarding the 5 being changed to a 4 in the computer as irrelevant under Fed. R. Evid. 401 or, alternatively, as more prejudicial than probative under Fed. R. 403.

Even if, however, the Court allows evidence regarding the LINK rating being changed, it should nevertheless order that Plaintiff be precluded from making any comments or arguments that Kimberly Klosak or any member of Sprint's Legal Department engaged in unethical conduct since there is absolutely no evidence to support Plaintiff's spurious allegations. Sprint's legal counsel (and Ms. Klosak) have abided by their ethical duties as attorneys licensed in the State of Missouri. While Plaintiff may be allowed by the Court to present evidence that the rating was changed in May 2000, and that Ms. Klosak and Ms. Crosswhite were aware of that change, Plaintiff should not be allowed to suggest that either women violated ethical duties as an attorney because of this knowledge. Any such allegation borders on defamation and Plaintiff should be restricted in arguing accordingly. Since Plaintiff has no evidence to the contrary, the Court should direct Plaintiff not to mention allegations of unethical conduct.

### K. The Court Should Not Allow Plaintiff to Call Donna Crosswhite, In-House Counsel for Sprint, as a Witness at Trial

Defendant anticipates that Plaintiff may attempt to call Donna Crosswhite, Sprint's in-house counsel, as a witness in this case. The Court should not allow Plaintiff to call Ms. Crosswhite as a

witness, however, because she was not listed on either parties' Rule 26 Disclosures or Final Witness Lists.

In addition, the Eighth Circuit has long discouraged the practice of forcing opposing trial counsel to testify as a witness. See, Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)(requiring opposing counsel to testify disrupts the adversarial system and lowers the standards of the profession; practice will have a "chilling effect" on the truthful communications between attorney and client). In recognition of the potential problems caused by forcing opposing counsel to testify, the Shelton Court developed a strict three-prong test that a party must satisfy in order to require the opposing attorney to testify. Id.

A party must show that "(1) no other means exist to obtain the information than to depose [or call] opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case." Id. Plaintiff cannot meet this difficult burden. First, Ms. Crosswhite's involvement in this case is limited to acting as legal counsel and advisor for Sprint's employees involved in the investigation of Plaintiff's claims. As such, the vast majority of information Plaintiff seeks from Ms. Crosswhite may be, and has already been, obtained by deposing the other Sprint employees involved in the investigation of Plaintiff's claims.

Plaintiff fares no better under the second prong of the Shelton test because any communications Ms. Crosswhite had with Kimberly Klosak, or any other employee of Sprint investigating Plaintiff's claims, are privileged by the attorney client privilege and/or work product doctrine. Indeed, the Shelton Court specifically noted that a corporation's "in-house" counsel is afforded the same protection as "outside counsel" with respect to the work product doctrine and the attorney client privilege. Shelton, 805 F.2d at fn. 3 (internal citations omitted). The attorney-client privilege also extends to information regarding documents because "[i]n document intensive cases,

. . . the answers to questions [regarding documents] could . . . in essence reveal[] the attorney's litigation strategy . . ." Id. at 1329.

Finally, Plaintiff cannot establish that Ms. Crosswhite's testimony is "crucial to the preparation of the case." Plaintiff has had documents indicating that Ms. Crosswhite is the Sprint in-house attorney assigned to Plaintiff's case for months. Plaintiff has also taken the deposition of numerous witnesses who confirmed that Ms. Crosswhite was involved in the investigation of Plaintiff's claims. Despite this information, however, Plaintiff did not include Ms. Crosswhite on his Rule 26 Disclosures or his Final Witness List. As such, Plaintiff cannot establish that Ms. Crosswhite's testimony is "crucial to the case"-- because clearly it is not.

Like the Shelton plaintiff, the Plaintiff in this case should not be forced to testify since Plaintiff is not seeking to discover information uniquely possessed by Ms. Crosswhite and central to the litigation, but rather is attempting to confirm information he has already obtained from other sources.

### III. CONCLUSION

WHEREFORE, Defendant Sprint/United Management Company, Inc., respectfully request that this Court issue its Order precluding Plaintiff from mentioning, discussing, arguing, or in any way, referring to the various areas of evidence noted above.

Respectfully submitted,

SHUGHART, THOMSON & KILROY, P.C.

By: /s/ Karen R. Glickstein
Karen R. GLICKSTEIN #37083
Monica Fanning #50511
120 W. 12th Street, Suite 1700
Kansas City, Missouri 64105
(816) 421-3355
(816) 374-0509 - Facsimile
ATTORNEYS FOR DEFENDANTS

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of March, 2002 the above and foregoing document was electronically filed, and a true and correct copy was served by hand delivery, to:

    Kirk D. Holman
    Michael R. Fletcher
    SANDERS, SIMPSON, FLETCHER &
      SMITH, L.C.
    1125 Grand Ave., Suite 1400
    Kansas City, MO 64106

    ATTORNEYS FOR PLAINTIFF

    /s/ Karen R. Glickstein
    Attorney for Defendants