IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **MICHAEL THORNE**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 00-0913-HFS |
| ) | |
| **SPRINT/UNITED MANAGEMENT,** ) | |
| **ET AL.** ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S TRIAL BRIEF

**COMES NOW** the plaintiff by and through his counsel of record and hereby sets forth the following legal memorandum addressing two affirmative defenses raised by the defendant in the above captioned matter. In addition, plaintiff will address the punitive damage instruction that should be given by this Court following the *Kolstad* opinion. Plaintiff states as follows:

### I. INTRODUCTION

In its answer, the defendant has raised the affirmative defense to liability and damages from *Faragher* and the affirmative defense to punitive damages under *Kolstad*. For these reasons, this Court should deny the defendant the opportunity to assert these affirmative defenses and no instructions should be provided to the jury accordingly.

### I. ARGUMENT

**A.   The Defendant Cannot Assert an Affirmative Defense Under Faragher:**

In his Complaint, the plaintiff has asserted a claim of hostile work environment based upon sex against the defendants. The U.S. Supreme Court in Faragher v. City of Boca Raton, 525 U.S. 775, 118 S.Ct. 2275, 2293 (1998), afforded defendant employers an affirmative defense

when faced with a hostile work environment claim. The Court found that when no tangible employment action is taken by the employer against the employee, the employer is afforded an affirmative defense to vicarious liability or damages by the actions of its managers when (a) the employer exercised reasonable care to promptly prevent and correct any sexually harassing behavior, and (b) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunity provided by the employer. Id. In the matter before this Court, plaintiff complained to management pursuant to company policy.

Even if the Court were to find against the plaintiff under the above argument, the defendant did take "tangible employment actions" against the plaintiff in the form of withholding a bonus to which plaintiff earned. Therefore, this affirmative defense cannot be available.

B.   **The Defendant Cannot Assert the Affirmative Defense under Kolstad:**

The plaintiff has made a claim for punitive damages against the defendant in his Complaint under all Counts. The U.S. Supreme Court has afforded defendant employers an affirmative defense to a claim for punitive damages in Kolstad v. American Dental Association, 527 U.S. 526, 119 S.Ct. 2118, 2129 (1999). The Supreme Court found that an employer should not be vicariously liable for punitive damages stemming from actions of managers that are contrary to the employer's "good faith efforts to comply with Title VII." Id. The Supreme Court concluded that it should be up to the District Courts in determining whether the employer took "good faith" efforts. Id. The defendant has asserted this defense in its affirmative defenses to plaintiff's Complaint. The defendant should be denied this affirmative defense.

The Court in Kolstad dealt with the defendant's *vicariously* liability for the actions of rogue managers within the organization. The Court found that when this situation arises, and punitives are a submissible issue, the defendant is entitled to assert an affirmative defense of
2

"good faith" regarding its actions as an employer to prevent discrimination and harassment in the workplace. Id. 2129-30. This Court did not address the availability of such defense when dealing with evidence of *direct liability* and not vicarious liability. Since Kolstad, one Court has addressed whether such defense is available when there is evidence of direct liability. Deters v. Equifax Credit Information Services, Inc., 202 F.3d 1262 (10th Cir. 2000).

In Deters, the Tenth Circuit concluded that when there is evidence of direct liability, the affirmative defense of "good faith" under Kolstad cannot be raised as a matter of law. Id. at 1271. "[K]olstad was a case involving vicarious liability, unlike this case that is premised on a theory of direct liability. Thus, the good-faith defense does not apply." Id. "[An] employer's malice or reckless indifference in failing to remedy or prevent a hostile or offensive work environment of which management level employees knew or should have known is premised on direct liability, not derivative liability, according to the doctrine of respondent superior." Id. at 1270. As the Court further stated:

> vicarious liability applies to situations in which a supervisor perpetrates harassment himself, whereas a theory of direct liability is more appropriate where an employer fails to respond adequately to harassment of which a management-level employee knew or should have known. This distinction is subtle, but proves to be crucial to our discussion of Equifax's invocation of a "good-faith" defense.

The Court in Deters found that direct liability existed because the plaintiff made complaints of her sexual harassment to the individual designated in the company's own policies. Id. at 1270-71. In the case at hand, plaintiff made complaints of harassment to his manager Robert Brown who was designated by policy to receive and act upon such complaints. Mr Brown waited more than one month to notify human resources of plaintiff's complaints on 2/14/00. Moreover, in emails dated 2/17/00, Brown copies Rob Hammond, the alleged harasser

3

regarding this "unpleasant situation" which Brown admitted in deposition to be the harassment issue involving plaintiff. Six days later, plaintiff has a bonus withheld.

As previously stated, when proof of direct liability exists, the defendant is not allowed to assert the "good faith" defense for punitive damages as allowed under Kolstad. This only makes sense. Kolstad's "good faith" defense to vicarious liability exists to protect the company from a rogue manager where the company has no knowledge of his or her conduct. Where the defendant employer has knowledge of the conduct, this affirmative defense to punitive damages is not allowed. Id. In the case at hand, Brown was aware of what was going on and failed to act. Instead, he copied the alleged harasser.

C.     **The Model Jury Instruction on Punitive Damages Must be Modified after Kolstad:**

If this Court were to allow plaintiff to submit a claim for punitive damages to the jury, it would be necessary to modify *Model Jury Instruction Eight Circuit* 5.04. This February 1999 model jury instruction was drafted prior to the U.S. Supreme Court's June 1999 ruling in Kolstad. This instruction sets forth a higher burden of proof to obtain punitive damages than the one articulated in Kolstad. Therefore, this Court should remove any language from this instruction that is not consistent with the findings of the U.S. Supreme Court.

The Kolstad opinion focused on the requirement of the plaintiff to only prove malice or reckless conduct by the defendant employer in order to obtain punitive damages under 42 U.S.C. §1981a. Kolstad, 119 S.Ct. at 2124. The Court further stated that it was not necessary to prove egregious misconduct on behalf of the employer in order to obtain punitive damages. Id. at 2124-25. Egregious conduct may serve as evidence supporting an inference of requisite evil motive, however, there is no requirement to show independent egregious conduct. Id. at 2126.

Model Jury Instruction 5.04 states in its first paragraph that the purpose of punitive damages is "to punish the defendant for some *extraordinary misconduct* . . ." No such requirement is set forth in Kolstad. Kolstad's rejection of the egregious misconduct requirement makes this term misleading and inappropriate. The second paragraph of this instruction appropriately tracks the language of §1981a and the findings in Kolstad. In his proposed instruction on 5.04, the plaintiff has suggested that the Court remove "for some extraordinary misconduct and . . .in such conduct" from the first paragraph. Doing so would remove any additional requirements that were not set forth in Kolstad. It would also remove any confusion that such language may cause the jury.

Removing requirements other than malice or reckless indifference would be consistent with Circuits that have drafted their punitive damage instruction following Kolstad. The Eleventh Circuit's instruction states:

> The plaintiff also claims that the acts of the defendant were done with malice or reckless indifference to the plaintiff's [federally protected] rights so as to entitle plaintiff to an award of punitive damages in addition to compensatory damages.

*Eleventh Circuit Manual of Model Jury Instructions*: *Civil* at §2.1 (Supplemental Damages Instructions) (2000). This instruction has no requirement for egregious or extraordinary misconduct. It tracks the requirements from Kolstad, nothing more, nothing less.

## II. CONCLUSION

For the above stated reasons, the defendant should be denied any opportunity to assert, or instruct the jury on, the affirmative defenses from *Faragher* and *Kolstad*. The Court should also modify Jury Instruction 5.04 to meet the findings from Kolstad.

5

**SANDERS, SIMPSON, FLETCHER & SMITH, L.C.**

By  S/ Kirk D. Holman
    Michael R. Fletcher #47495
    Kirk D. Holman #50715
    1125 Grand Avenue, Suite 1400
    Kansas City, Missouri 64106
    (816) 471-6444
    FAX: (816) 471-6664
    ATTORNEYS FOR PLAINTIFF

I hereby certify that a copy of
the foregoing was mailed electronically
upon the following:

Karen R. Glickstein, Esq.
Monica M. Fanning, Esq.


S/ Kirk D. Holman