**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL THORNE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 00-00913-HFS** |
| | ) | |
| **SPRINT/UNITED MANAGEMENT** | ) | |
| **COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT**
**AS A MATTER OF LAW AT THE CLOSE OF PLAINTIFF'S EVIDENCE**

COME NOW Defendants Sprint/United Management Company and Sprint Spectrum, LLC, ("Sprint"), pursuant to Fed. R. Civ. P. 50, and respectfully request that this Court issue its Order entering judgment as a matter of law in Defendants' favor on each of Plaintiff's remaining claims. After presenting evidence and being fully heard, Plaintiff has failed to establish a legally sufficient evidentiary basis for a reasonable jury to find in his favor on any of Plaintiff's claims. Since Plaintiff has failed to meet his evidentiary burden, Defendants are entitled to judgment as a matter of law on all remaining claims.

**I.      Standard for Judgment as a Matter of Law**

Defendants are entitled to judgment as a matter of law because Plaintiff has failed to produce sufficient evidence from which a reasonable jury could return a verdict against Defendants. See, Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). The standard in ruling on a motion for judgment as a matter of law is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Southwest Mo. Office of Aging v. Missouri DSS, 850 F. Supp. 816, 819 (W.D. Mo. 1994). See also,

<u>Denesha v. Farmers Ins. Co.</u>, 161 F.3d 491 (8th Cir. 1998)(motion for judgment as a matter of law should be granted if evidence points one way and is susceptible of no reasonable inferences sustaining opposing party's position). Under this standard, Defendants are entitled to judgment as a matter of law because the evidence is so one-sided in Defendants' favor that submission of the claims to the jury is not warranted.

## II. Defendants Are Entitled to Judgment as a Matter of Law on Plaintiff's Same-Sex Harassment Claims

Plaintiff has not carried his burden of demonstrating that the alleged conduct of Hammond meets the statutory requirements for sexual harassment under federal or state law, and, therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's harassment claims.

Same-sex harassment is recognized under Title VII. <u>See</u> <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 79 (1998). To establish a <u>prima facie</u> case of same-sex harassment, Plaintiff must show (1) he is a member of a protected class; (2) he was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based on sex; (4) the conduct was unwelcome; (5) and the conduct was sufficiently severe or pervasive to create an abusive working environment. <u>Meritor Sav. Bank v. Vinson</u>, 477 U.S. 57, 66-69 (1986).

### 1. Plaintiff Failed to Establish That He Was Subject to "Sexual" Conduct

Plaintiff's <u>prima facie</u> case of discrimination fails because he cannot establish that he was subjected to sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature. Essentially, Plaintiff testified that Hammond rubbed his leg against Plaintiff's leg on three occasions within a three-week period, rubbed his shoulders once, and in October or November of 1999, entered the cube Plaintiff shared with Jarrod Nichols and rubbed his crotch against Plaintiff's shoulder while Nichols was seated next to Plaintiff in the cube working on his computer. Plaintiff

also claims that Hammond commented a few times, that Plaintiff was "big" or muscular, presumably as a result of his trips to the gym. Finally, and only after Sprint investigated and determined Plaintiff's claims to be without merit, Plaintiff claimed that Hammond had followed him into the restroom on ten or more occasions and looked at him inappropriately while he was using the urinal.

The law governing Plaintiff's claims is well-settled. Isolated incidents such as the leg and shoulder touching are not "sexual in nature" or the "type that would interfere with a reasonable person's work performance . . . to the extent required by Title VII." Hopkins v. Baltimore Gas and Electric Co., 77 F.3d 745, 753 (4th Cir. 1996) (same-sex Plaintiff's claims that harasser bumped into him were not sexual in nature and, therefore, insufficient to support Title VII claim); Pavao v. Ocean Ships, Inc., 1998 WL 917528, *2 (N.D. Cal. 1998)(employer entitled to summary judgment in same sex harassment case because plaintiff's allegations that his supervisor put his arm around plaintiff and occasionally touched him on the arms, shoulders and neck were not sufficiently sexual in nature to support Title VII claim--they were "incidental physical contact, nothing more"), attached hereto as "Exhibit A."

Plaintiff's only complaint which could arguably be construed to be "sexual" is the alleged incident in which Hammond rubbed his genitals on Plaintiff's shoulder. This incident, however, does not constitute actionable sexual harassment since it was an isolated incident which was not "extremely severe." See Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1158 (8th Cir. 1999) (isolated incidents, unless extremely severe, will not support a hostile environment claim).

## 2. Plaintiff Failed to Present Sufficient Evidence That He Was Harassed "Because of His Sex"

Plaintiff's prima facie case of harassment also fails because he has not presented any evidence that he was harassed "because of his sex." "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination . . . because . . . of sex." Oncale,

523 U.S. at 80-81 (quoting Title VII). The "critical issue" is whether "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Id. A plaintiff must show that the conduct in question was motivated by his or her gender. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 63-66 (1986).

The requirement that discrimination be based on gender applies with equal force in same-sex harassment cases. Oncale, 523 U.S. at 81. To show discrimination has occurred, a plaintiff alleging male-female or female-male harassment may take advantage of certain inferences which are not available to plaintiffs in the same-sex harassment context. For example, where the challenged conduct involves explicit or implicit proposals of sexual activity, "it is reasonable to assume those proposals would not have been made to someone of the same sex." Oncale, 523 U.S. at 81. In same-sex harassment cases, however, similar inferences about a harasser's motivation may not be considered reasonable. Id. at 81 ("The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual").

In Oncale, the Court set out three avenues of proof by which a plaintiff may be able to establish an inference that harassment by a member of the same gender is because of sex. First, the inference could arise where the harasser made "explicit or implicit proposals of sexual activity," so long as the plaintiff has "credible evidence that the harasser was homosexual," thereby proving the harasser was actually motivated by "sexual desire." Id. Second, a plaintiff in a same-sex case could demonstrate that he was "harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by a general hostility to the presence of [members of the plaintiff's sex] in the workplace." Id. Finally, a plaintiff may "offer direct comparative evidence about how the harasser treated members of both sexes in a mixed-sex workplace." Id.

Regardless of which avenue of proof Plaintiff chooses, he has not created a submissible claim. Plaintiff has presented no evidence that his alleged harasser is homosexual, he alleges no "sex-specific" terms or conduct that might suggest Hammond was driven by an anti-male motive, and he fails to present any evidence regarding how Hammond treated males differently than females. As a result, Plaintiff has failed to state a viable claim for same-sex harassment under the standards set forth by the Supreme Court in Oncale.

### a. Plaintiff Presented No Evidence Hammond is Homosexual or That the Alleged Harassment Was Motivated by Sexual Desire

Plaintiff claims that Hammond physically and verbally sexually harassed him. If Hammond's alleged words and actions were not genuinely "motivated by sexual desire," however, Plaintiff cannot make his case under this avenue of proof. Oncale, 118 S. Ct. at 1002. Under Oncale, even overt offers of sexual favors do not give rise to an actionable claim for same-sex harassment absent "credible evidence" that the alleged harasser is homosexual. Id. See, also, Fry v. Holmes Freight Lines, Inc., 72 F.Supp.2d 1074, 1078 (W.D. Mo. 1999)(citing Oncale)(a same-sex plaintiff can establish that the defendant's conduct was based on sex through "credible evidence that the harasser is homosexual"). With "credible evidence" of the harasser's homosexual tendencies, the jury may infer the harasser's actions were motivated by homosexual desire, and, consequently, would not have been directed at someone of the opposite sex. Id.

Several courts have rejected the proposition that a plaintiff can avoid judgment as a matter of law merely by resting on the inherently sexual nature of the conduct at issue as "proof" of the alleged harasser's sexual orientation. See, McWilliams v. Fairfax County Bd. of Supervisors, 72 F.3d 1191, 1195 n.5 (4th Cir. 1996)(dismissing contention that alleged harasser's homosexuality could be "properly inferrable from the nature of some of the harassing conduct"). The Fourth Circuit recognized the danger in allowing claims to go forward where the homosexuality of the purported

harasser was only "suggested by [his] conduct . . .[T[he sexual harassment claim would have been effectively extended to cover any conduct . . . that included sufficient homosexual innuendo." Id.

Likewise, in Bolt v. Norfolk Southern Corp., 22 F. Supp.2d 512 (E.D. Va. 1997), decided prior to Oncale, the district court recognized the existence of a cause of action for same-sex harassment, but held that the plaintiff had failed to provide anything other than the alleged harassing conduct to suggest the alleged harasser was homosexual. 22 F. Supp. 2d at 518. In Bolt, the plaintiff alleged that his foreman patted and grabbed his buttocks, told him he had a "nice butt," attempted to hug him, made sexually suggestive comments, pulled him onto his lap and "performed simulated homosexual acts on him," told him that he liked him "in a sexually suggestive manner," and invited plaintiff to spend the night on a sailboat. Id. at 514. Despite these allegations, the court dismissed plaintiff's sexual harassment claim, citing evidence that the alleged harasser had been married, was seen out with women socially and was never seen out on a date with a man. Id. at 518-19. See, also, Gibson v. Tanks, Inc., 930 F.Supp. 1107, 1108-109 (M.D.N.C. 1996)(granting summary judgment despite allegations male supervisor "used sexual epithets, conditioned receipt of expense money and the number of hours credited to [the male plaintiff] on sexual favors, and poked and grabbed [the plaintiff] and other crew members in the buttocks and genital area," relying in part on evidence alleged harasser was married).

Plaintiff has presented no evidence, let alone "credible evidence," that Hammond, the married father of two children, is homosexual. In fact, Plaintiff admits he does not know if Hammond is homosexual. Hammond denies that he is homosexual and that he has ever had, or desired, homosexual experiences. Based upon this evidence, no reasonable jury could conclude that Hammond is homosexual or that his alleged conduct was motivated by sexual desire.

**b.      Plaintiff Presented No Evidence Hammond Was Motivated By a Hostility to the Presence of Males in the Workplace**

As the Supreme Court explained, a plaintiff is not required to demonstrate that his alleged harasser is homosexual in order to sustain a claim of same-sex harassment.  Instead, he can produce evidence that the alleged harasser directed "sex-specific and derogatory terms" toward the plaintiff so as to demonstrate he was "motivated by general hostility" toward men in the workplace.  Oncale, 118 S. Ct. at 1002.  Plaintiff fares no better under the second "evidentiary route" set forth in Oncale since there is no evidence that Hammond was motivated by a hostility to the presence of males in the workplace.

Plaintiff testified that due to Hammond's attitude toward him, including an incident when Hammond made a harsh comment to him in an "all-hands" meeting, he was treated differently than "everyone" in Hammond's group, which included both men and women.  Based upon Plaintiff's own testimony, no reasonable jury could conclude that Plaintiff was discriminated against "because of" his sex based upon any claim that Hammond was hostile towards males in the workplace.  See, e.g., Ciccotto v. LCOR, 2001 WL 514304 at *5 (S.D.N.Y.) (same-sex plaintiff did not establish that he was discriminated against based upon his sex since he provided the court with no evidence "of plaintiff's hatred of other men"), attached hereto as "Exhibit B."  As a result, Plaintiff has failed to make a submissible claim that he was harassed because of sex under the second prong of the Oncale test.

**c.      Plaintiff Has Not Demonstrated Hammond Treated Men Differently From Women in the Workplace**

Plaintiff has also failed to present any evidence that Hammond treated males and females differently in the mixed-gender work environment.  As previously discussed, Plaintiff testified that

Hammond treated all of the other employees in his work group, both male and female, more favorably than Hammond treated him. Plaintiff also admitted that he observed Hammond pat other employees on the back. Likewise, Plaintiff's co-workers testified that they had observed Hammond be "short" with both male and female employees in staff meetings. As a result, no reasonable jury could conclude that Sprint discriminated against Plaintiff because of his sex based upon any claim that Hammond treated males and females differently in the workplace.

### 3. Plaintiff Failed to Establish a <u>Prima</u> <u>Facie</u> Case of Discrimination Since the Alleged Harassment Was Not Sufficiently "Severe or Pervasive"

In addition to showing the conduct is "because of sex," Plaintiff must show that the alleged harassment was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of employment. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) (internal citations omitted). Conduct that is "merely offensive" or "not severe or pervasive enough to create an objectively hostile or abusive work environment," is beyond Title VII's purview. <u>Id</u>.

In evaluating whether the alleged harassment rises to the level of a "hostile environment," courts must consider the totality of the circumstances. <u>Oncale</u>, 523 U.S. at 81. Factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris</u>, 510 U.S. at 23. Title VII is not a "general civility code"; it requires more than "simple teasing, offhand comments, and isolated incidents (unless extremely serious)." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998) (citing <u>Oncale</u>). <u>Accord</u> <u>Breeding</u>, 164 F.3d at 1158. "Lesser incidents 'must be sufficiently continuous and concerted in order to be deemed pervasive.'" <u>Ciccotto</u>, 2001 WL at *6 (internal citations omitted). <u>Accord</u> <u>Pfullman v. Texas Dept. of Transportation</u>, 24 F. Supp.2d 707, 709 (W.D. Tex. 1998) (in same sex Title VII case "bothersome attentions or sexual remarks must be 'severe or pervasive' to create a hostile work environment");

<u>Comstock v. Consumer Markets, Inc.</u>, 953 F. Supp. 1096, 1102 (W.D. Mo. 1996) ("Instead of sporadic incidents, there must be a steady barrage of opprobrious offensive comments.")

>    a.    **Plaintiff's Claims of Harassment Are Not Sufficiently Continuous or Serious to be Deemed "Severe and Pervasive"**

Plaintiff's allegations, taken individually or collectively, are not sufficiently severe or pervasive to support a hostile environment claim under Title VII. As previously discussed, sporadic and isolated incidents such as those alleged by Plaintiff are insufficient as a matter of law to support a hostile environment claim. <u>See</u> <u>e.g.</u>, <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238, 1246-247 (11th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1068 (2000) (citing several cases from variety of jurisdictions where physical touch and comments were held to be insufficient to establish hostile environment as a matter of law); <u>Hopkins</u>, 77 F.3d 745 (plaintiff's allegations, which included claim that his supervisor "stared at him in the bathroom," were not sufficiently severe or pervasive to create objectively hostile environment); <u>Morgan v. Massachusetts Gen. Hospital</u>, 901 F.2d 186 (1st Cir. 1990) (affirming summary judgment where alleged conduct, including claims that the alleged harasser "peeped" at his private in the restroom, was not the type that would interfere with a reasonable person's work performance); <u>Lee v. Junior College District</u>, 1995 WL 363723 (E.D. Mo.), <u>aff'd</u>, 91 F.3d 148 (8th Cir. 1996) (defendant entitled to summary judgment since plaintiff's allegations that co-employee touched her back or shoulders approximately ten times over a four month period were not sufficiently severe to establish a hostile environment), attached hereto as "Exhibit C."

>    b.    **Even Viewed Collectively, No Reasonable Jury Could Conclude That Plaintiff's Claims of Harassment Are Sufficiently Severe to Maintain a Title VII Hostile Environment Claim**

Even viewed collectively, the incidents alleged by Plaintiff fall far short of the types of incidents that, taken together, have been deemed to be severe and pervasive in a same sex context. For example, in <u>Pfullman</u>, 24 F. Supp.2d at 712 - 713, a male employee brought a same sex

harassment claim alleging that his supervisor sat on his lap and "rocked around," commented "that sure felt good right here"; made fellatio insinuations to plaintiff while plaintiff was eating a sausage; and told a co-employee, in connection with fit-testing respirators, "bend over and I will 'fit test' you right here." The court concluded that "even viewed together," these incidents were crude but did not create a hostile environment under Title VII.

Similarly, in Cross v. Chicago School Reform Bd. of Trustees, 80 F. Supp.2d 911 (N.D. Ill. 2000), a former high school teacher sued the school district alleging same-sex harassment. Specifically, the plaintiff claimed that his supervisor: (1) showed him a sexually explicit card in the presence of others; (2) touched him on one occasion in the cafeteria; (3) put his arm around him in the lunchroom; (4) asked him to join him for cocktails in the presence of others; and (5) asked him to take his clothes off. Plaintiff also claimed that his supervisor put his knee in plaintiff's behind and told him explicitly sexual jokes. Using the Harris factors as a framework for analysis, the court determined that plaintiff could not establish a hostile environment claim as a matter of law since the alleged incidents were isolated, occurred over the course of more than one year, were not physically threatening, and the actions were merely offensive and not abusive. Id. at 915-16.

Other courts have reached the same conclusion. In Hopkins, 77 F.3d 745, an employee brought a same-sex harassment claim against his former employer. The Fourth Circuit affirmed summary judgment in favor of defendant, finding that the male supervisor's alleged sexual harassment, which included bumping into the employee, positioning a magnifying glass over the employee's crotch, giving the employee a congratulatory kiss on the lips at employee's wedding, staring at employee in bathroom, commenting on employee's appearance and making inappropriate sexual comments, was not sufficiently severe or pervasive to create an objectively hostile environment. Id. at 753. Similarly, in Morgan, 901 F.2d at 186, a male employee claimed that his

co-worker sexually harassed him by asking him to dance at the Christmas party; stood behind him as he was mopping, causing him to bump into the co-worker; "peeped" at his privates in the restroom; and "hung around him a lot." The First Circuit upheld the trial court's decision granting summary judgment, finding that the alleged conduct was not the type that would interfere with a reasonable person's work performance. Id. at 192.

Even viewed collectively, no reasonable jury could conclude that Plaintiff's allegations of harassment are sufficiently severe or pervasive to create an objectively hostile or abusive work environment. Unlike the plaintiffs in the above-referenced cases, Plaintiff points to only one incident, the alleged touching in the cube when Jarrod Nichols was present, that can be deemed "sexual." The remaining incidents Plaintiff alleges consist of innocuous touchings on his leg (on three occasions) and on his shoulder (on one occasion) and Hammond allegedly watching him in the restroom, a complaint which was not even made until after the results of Sprint's initial investigation had been communicated to Plaintiff. Under this set of facts, no reasonable jury could conclude that Plaintiff was subjected to an environment of "severe and pervasive" harassment.

## III.    Sprint is Entitled to Judgment as a Matter of Law on Plaintiff's Retaliation Claims

In order to establish a prima facie case of retaliation under either Title VII or the MHRA[1] Plaintiff must establish that he (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 684 (8th Cir. 2001); West v. Marion Merrell Dow, Inc., 54 F.3d 493, 496-97 (8th Cir. 1995). If Plaintiff succeeds in establishing a prima facie case of retaliation, the McDonnell Douglas burden-shifting framework applies and Sprint must offer

---

[1]The standard for proving a hostile environment and retaliation is the same under Title VII and the MHRA. See e.g., Finley v. Empiregas, Inc. of Potosi, 975 F.2d 467, 473 (8th Cir. 1992).

Case 4:00-cv-00913-HFS    Document 94    Filed 03/29/02    Page 11 of 22

a legitimate, non-discriminatory reason for the alleged retaliatory acts. Plaintiff then bears the burden of establishing that the reason provided by Sprint is pretextual. Manning v. Metropolitan Life Ins. Co., Inc., 127 F.3d 686, 692 (8th Cir. 1997). The burden of proof remains at all times with the Plaintiff. Kneibert v. Thomson Newspapers, Michigan, Inc., 129 F.3d 444, 452 (8th Cir. 1997).

1. **Plaintiff Failed to Establish a <u>Prima</u> <u>Facie</u> Retaliation Claim Because He Did Not Suffer Any Adverse Action**

Sprint is entitled to judgment as a matter of law on Plaintiff's retaliation claims because he cannot establish two of the three elements of a <u>prima</u> <u>facie</u> case: he did not suffer any adverse action nor can he establish a causal connection between any "protected activity" and the alleged adverse action. The only adverse action claimed by Plaintiff is the denial of his discretionary MIP bonus in 2000.

a. **Denial of Plaintiff's MIP is Not an Adverse Action**

Plaintiff claims that the denial of the personal performance portion of his MIP (discretionary bonus) in February 2000 constitutes adverse action. This Court considered a similar question in Burch v. Henderson, 2000 WL 97184 (W.D. Mo.), attached hereto as "Exhibit D." Plaintiff in Burch alleged that her exclusion from two bonuses, after receiving disciplinary warnings, constituted an adverse action for retaliation purposes. 2000 WL at *12. In Burch the court concluded that denial of the bonus was an adverse action. Id. That decision was premised, however, on the court's conclusion that exclusion from the annual bonus at issue

occurred only in "rare" circumstances. Id. Plaintiff presented no such evidence in this case.[2]

---

[2]Sprint respectfully suggests that the better reasoned view is that applied by the court in Hunt v. City of Markham, 219 F.3d 649, 654 (7th Cir. 2000) (denial of bonus not a material adverse action because bonuses generally are sporadic, irregular, unpredictable and discretionary).

Case 4:00-cv-00913-HFS   Document 94   Filed 03/29/02   Page 12 of 22

2. **Plaintiff Failed to Establish a <u>Prima Facie</u> Retaliation Claim Because There is No Evidence of Causation**

Even if Plaintiff presented evidence establishing that he suffered some adverse action, he presented no evidence linking that adverse action to his harassment complaint made in January 2000. As a result, Plaintiff has failed to establish the third prong of a <u>prima facie</u> case of retaliation.

a. **Plaintiff Did Not Present Sufficient Evidence That the Denial of the MIP was Caused by the Report of Sexual Harassment**

Plaintiff claims that he did not receive a portion of his MIP because he complained to Brown of harassment in January 2000. Plaintiff admitted, however, that he has "no idea" when the decision to deny him a MIP was made or by whom that decision was made. He believes, however, that Hammond was the individual behind the decision.

Plaintiff's testimony regarding his lack of knowledge about the MIP explains his faulty logic. The recommendation that Plaintiff not receive a MIP was initially made by Brown, with approval from both Hammond and John Yuzdepski, a vice president at Sprint and Hammond's immediate supervisor. This process started in late December 1999 or early January 2000. The determination of whether an individual receives a MIP is based, in part, on an individual's performance.

When these facts are considered in context it would be impossible for any reasonable jury to determine that the failure to receive the MIP was caused by Plaintiff's complaint of harassment made in January 2000. First, Plaintiff admits that he had no problems with Brown and believes that any alleged retaliation was orchestrated by Hammond. Witnesses testified, and documents confirm, that the decision Plaintiff would not receive a MIP was made in January 2000,[3] well before Hammond was informed in March 2000 that Plaintiff had complained of sexual harassment. It is both a matter of common sense and legal principle that an individual cannot retaliate against another if he does not

_____

[3] Indeed, the MIP documents were distributed by Mid-February 2000.

know that a complaint of harassment has been made. See, e.g., Jackson v. U.S. Postal Service, 162 F. Supp.2d 1246, 1259 (D. Kan. 2001) (granting summary judgment on plaintiff's retaliation claim since causation could not exist where there was no evidence that the individual who took adverse action against plaintiff knew of the protected activity); Chambers v. Walt Disney World Co., 132 F. Supp.2d 1356, 1368 (M.D. Fla.2001) (in order to establish causal connection plaintiff must show that decision maker was aware of complaint); Rogers v. Frank, 782 F. Supp. 91, 93 (E.D. Mo.), aff'd, 972 F.2d 354 (8th Cir. 1992) (judgment granted on retaliation claim where decision makers had no knowledge of protected activity).

In addition, a plaintiff cannot prove the causation element of a retaliation claim when the performance issues giving rise to the alleged adverse action began prior to the time the plaintiff engaged in protected activity. See, e.g., Smith v. Ashland, Inc., 250 F.3d 1167, 1174 (8th Cir. 2001) (affirming summary judgment where performance problems were documented prior to the time of alleged retaliatory acts and, therefore, plaintiff could not establish causation); Kneibert, 129 F.3d at 455 (affirming summary judgment where plaintiff had been notified of performance problems prior to time charge of discrimination was filed). In this case, the testimony establishes that there had been concerns over aspects of Plaintiff's employment when he received his performance review in 1999, for work performed from late 1998 to early 1999. Brown also testified extensively regarding his significant concerns about Plaintiff's performance in late 1999, as well as numerous e-mail messages he sent to Plaintiff regarding performance issues. Since making a claim of harassment "does not 'clothe the complainant with immunity for past and present inadequacies, [and] unsatisfactory performance,'" the mere sequential timing of the actions is insufficient to establish causation. Kneibert, 129 F.3d at 455 (quoting Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1391 (8th Cir.), cert. denied, 488 U.S. 892 (1988)).

In short, based upon the evidence presented by Plaintiff, there is no set of circumstances from which a reasonable jury could find causation. Since Plaintiff does not believe that Brown retaliated against him, and since the evidence conclusively establishes that Hammond was not aware of the complaint of harassment at the time he approved the decision that Plaintiff not receive a MIP, it would be impossible for a factfinder to link Plaintiff's complaint of harassment to the denial of the discretionary portion of his MIP. In addition, it is uncontroverted that Plaintiff's supervisors made him aware of performance issues prior to the time he complained of harassment in January 2000, negating any inference of causation. As a result, Plaintiff has failed to establish the final prong of a prima facie retaliation case and judgment as a matter of law on Plaintiff's retaliation claims should be entered in favor of Sprint.

### 3. Plaintiff's Retaliation Claim Fails Because the Reasons for the Adverse Acts are Non-Pretextual

Even if Plaintiff could establish a prima facie case of retaliation, Sprint is entitled to judgment as a matter of law on the retaliation claim because there is no evidence from which a reasonable jury could determine that Sprint's stated reasons for taking any alleged adverse actions were pretextual. The Supreme Court recently provided guidance on the type of evidence required to establish pretext. In Reeves v. Sanderson Plumbing, 530 U.S. 133, 146-147 (2000), the Court explained that "[t]he ultimate question is whether the employer intentionally discriminated and proof that 'employer's proffered reason is unpersuasive, or even contrived, does not necessarily establish that plaintiff's proffered reason . . . is correct.'" Id. (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 524 (1993)).

In determining whether Sprint's proffered reason for the alleged adverse actions are pretextual, the Court should not be concerned with whether Defendant was correct in its determination about Plaintiff's performance, "but only with whether it was the reason" for any alleged

retaliation.  Crimm v. Missouri Pac. R.R. Co., 750 F.2d 703, 712 (8th Cir. 1984).  As the Eighth Circuit has repeatedly noted, "federal courts do not sit as a super-personnel department that reexamines an entity's business decisions."  Kneibert, 129 F.3d at 454.  Accord Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994).

As noted earlier, it is uncontroverted that Plaintiff's supervisors made him aware that they had concerns about his performance prior to January 2000.  In Spring 1999, Plaintiff received a performance review which showed he needed development in two areas: professional knowledge and communications.  Brown testified that there were issues regarding Plaintiff's tardiness and performance.  The only contrary evidence regarding Plaintiff's performance comes from Plaintiff himself.

As was true with regard to causation, the fact that Plaintiff's performance was questioned before he complained of harassment in January 2000 negates any inference of pretext with regard to the MIP denial.  Rheineck v. Hutchinson Technology, Inc., 261 F.3d 751, 757 (8th Cir. 2001) (affirming summary judgment on pretext grounds where plaintiff's performance had been questioned prior to protected activity).  Similarly, the fact that Plaintiff believes his performance issues were someone else's fault constitutes nothing more than a conclusory allegation insufficient to establish pretext.  See, e.g., Luciano v. Monfort, Inc., 259 F.3d 906, 910 (8th Cir. 2001) (affirming summary judgment on retaliation claim where plaintiff argued that performance reasons provided by company were pretextual because he believed he had been "set up" by company);  Kneibert, 129 F.3d at 455 (in order to survive summary judgment plaintiff "must provide sufficient, probative evidence," as opposed to "mere speculation, conjecture, or fantasy) (quoting Wilson v. Int'l Business Machines Corp.,62 F.3d 237, 241 (8th Cir. 1998)).  Since Thorne has presented no evidence, other than self-serving, conclusory allegations, that his performance was acceptable, he cannot establish pretext and,

therefore, Sprint is entitled to judgment as a matter of law on Plaintiff's retaliation claims.

**IV.  Sprint Should be Granted Judgment as a Matter of Law on Plaintiff's Claims for Punitive Damages Because There is No Evidence That Sprint Acted with Malice or Reckless Disregard of Plaintiff's Rights**

Under 42 U.S.C. § 1981a(b)(1) a plaintiff may recover punitive damages only if he can establish that the defendant "engaged in a discriminatory practice . . . with malice or with reckless indifference" to his federally protected rights.  "Federal law imposes a formidable burden on Plaintiffs who seek punitive damages in employment discrimination cases." Webner v. Titan Distribution, Inc., 267 F.3d 828, 837 (8th Cir. 2001) (quoting Henderson v. Simmons Foods, Inc., 217 F.3d 612, 618 (8th Cir. 2000)).

**1.  Sprint is Entitled to Assert a Kolstad Affirmative Defense, as well as a Kolstad Punitive Damages Jury Instruction if Punitive Damages are Submitted**

The Supreme Court attempted to explain the standard for imposing punitive damages under §1981a in Kolstad v. American Dental Association, 527 U.S. 526, 119 S. Ct. 2118 (1999).  In Kolstad, the Court concluded that punitive damages are proper only in those situations where the defendant's conduct is "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." 119 S. Ct. at 2124-2125.  The analysis is two pronged:  the plaintiff must establish the requisite malice as well as impute liability to the employer. Id. at 2126.  Plaintiff bears the burden of proof.  119 S. Ct. at 2126.

The standard for imputing liability announced in Kolstad differs from the automatically imputed liability announced by the Court in Burlington Industries v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998).  Under Kolstad "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where those decisions are contrary to the employer's good faith efforts to comply with Title VII." 119 S. Ct. at 2129.

The facts of this case are similar to those presented to the court in Hull v. Apcoa/Standard Parking Corp., 2000 WL 198881 (7th Cir.), attached hereto as "Exhibit E." Like Thorne, plaintiff in Hull was aware of his company's sexual harassment policy, which contained multiple avenues for reporting of unwanted harassment. Hull, however, chose not to report the harassment until he left the employ of the company, although he did contact management on one occasion while he was still working to explain that he was having problems with his supervisor. 2000 WL at *7. The Court granted summary judgment to defendant with respect to plaintiff's punitive damage allegations, finding that the fact that Hull chose not to avail himself of the policy did not indicate that the company lacked good faith. Id. See also Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 988 (8th Cir. 1999) (affirming trial court's decision granting judgment as a matter of law on plaintiff's punitive damage claim since even if company "excessively delayed" in conducting investigation into claims of harassment, there was no evidence that it acted with malice or reckless indifference).

The standard for awarding punitive damages is similar under the Missouri Human Rights Act. "To receive punitive damages under the MHRA, the plaintiff must show actual outrageousness, that is, a 'culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act or reckless disregard (from which evil motive is inferred) for an act's consequences.'" Hunley v. Sprint United Management Co., 2001 WL 1327079 at *1-2 (8th Cir. 2001) (quoting Burnett v. Griffith, 769 S.W.2d 780, 787 (Mo. 1989)), attached hereto as "Exhibit F." Since it is uncontroverted that Sprint had multiple policies in place explaining both its policy against sexual harassment and the avenues pursuant to which an employee could report harassment, and since it is uncontroverted that the company conducted a detailed investigation into Plaintiff's claims of harassment, Sprint is entitled to judgment as a matter of law on Plaintiff's claims of punitive damages under both Title VII and the MHRA.

### 2. Plaintiff's Reliance on __Deters v. Equifax Credit Information__ is Misplaced

In his Trial Brief, Plaintiff erroneously contends that Sprint is not entitled to assert a __Kolstad__ affirmative defense. Plaintiff's Trial Brief at p. 2. Although Plaintiff acknowledges that the "Supreme Court found that an employer should not be vicariously liable for punitive damages stemming from the actions of managers that are contrary to the employer's 'good faith efforts to comply with Title VII,'" he nevertheless claims that this defense is not available to Sprint. Plaintiff reasons that because there is allegedly evidence of "direct liability," rather than "vicarious liability," Sprint is precluded from asserting a __Kolstad__ defense under the holding in __Deters v. Equifax Credit Information Services, Inc.__, 202 F.3d 1262 (10th Cir. 2000). Plaintiff's reasoning is legally and factually flawed.

In __Deters__, the plaintiff alleged that she was repeatedly subject to sexual harassment by three male coworkers, and her original male supervisor. __Id.__ In upholding the jury's punitive damages award, the Tenth Circuit found that the "the record was replete," with evidence that plaintiff complained to Jim Taylor, the general manager of defendant, on numerous occasions about the "daily" harassment. Mr. Taylor was the highest managerial officer in the Kansas City office, overseeing the entire staff. He was designated specifically by defendant to implement its Human Resources policies, including its sexual harassment policy.

At trial, plaintiff produced evidence that (1) Taylor had personal knowledge of the harassment occurring and that he had witnessed some of the harassment; and (2) Taylor's responses to her persistent complaints were seriously deficient. For example, plaintiff (and others) testified that Mr. Taylor told her that the alleged harassers were "revenue producers," and that she needed to remember that she was a "non-revenue person." __Id.__ The jury awarded plaintiff a significant punitive damage award.

Defendant appealed claiming that plaintiff was not entitled to punitive damages as a matter of law under Kolstad because Taylor was merely negligent, and there was not sufficient evidence to support a finding that his conduct was "reckless" or "malicious." The Tenth Circuit disagreed finding that plaintiff had presented sufficient evidence to establish that Taylor personally observed instances in which plaintiff was verbally harassed; was wholly unresponsive to plaintiff's numerous complaints; told plaintiff that the alleged harassers were "hardcore" and reminded plaintiff that the alleged harassers were revenue producers and she was not; and told her that she was "reading too much into" and the alleged harasser's actions.

Unremarkably, the Tenth Circuit held that Taylor's conduct could be construed as "malicious" or "reckless" entitling plaintiff to a punitive damage award. The court further noted that Taylor's actions could be imputed to the defendant because "[w]hen a company specifically designates a particular employee within the company as a final person responsible for enforcing that company's policy against discrimination, then the company's own designation, information provided to such an employee is knowledge to the company.

Plaintiff claims that based upon Deters, this Court should not allow Sprint to assert a Kolstad defenses because "plaintiff made complaints of harassment to his manager Robert Brown who was designated by policy to receive and act upon such complaints. Mr. Brown waited more than one month to notify human resources of plaintiff's complaints and, therefore, Brown's actions should be imputed to Sprint." Plaintiff's Trial Brief at p. 4. This Court should reject plaintiff's argument for several reasons. First, unlike Taylor, Mr. Brown was not "the individual specifically named" as the person responsible for enforcing Sprint's sexual harassment policies.

The testimony establishes that there were several such individuals to whom reports could be made. Second, Mr. Brown never witnessed any alleged acts of harassment. Finally, when Mr. Brown

reported the alleged harassment to Sprint, it is uncontroverted that Sprint immediately took Plaintiff's allegations seriously and conducted an investigation.

The fact that Mr. Brown may have waited some period of time to report the alleged harassment, at Plaintiff's specific request, does not constitute "direct evidence of liability," nor does it establish that Sprint acted with "malice" or "reckless indifference" to plaintiff's rights. See, Dhyne v. Meiners Thriftway, Inc., 184 F.3d 983, 988 (8th Cir. 1999) (affirming trial court's decision granting judgment as a matter of law on plaintiff's punitive damage claim since even if company "excessively delayed" in conducting investigation into claims of harassment, there was no evidence that it acted with malice or reckless indifference). It was not malicious or reckless for Mr. Brown to consider the confidentiality request of Plaintiff and/or to consult with Human Resources regarding Brown's responsibilities to report the allegations despite Plaintiff's request that he not do so.

Since it is uncontroverted that Sprint had multiple policies in place explaining both its policy against sexual harassment and the avenues pursuant to which an employee could report harassment, and since it is uncontroverted that the company conducted a detailed investigation into Plaintiff's claims of harassment, Sprint is entitled to judgment as a matter of law on Plaintiff's claims of punitive damages under both Title VII and the MHRA. Alternatively, the company is entitled to a Kolstad affirmative defense instruction.

## V.    CONCLUSION

WHEREFORE, Defendants Sprint/United Management Company and Sprint Spectrum, LLC respectfully request that this Court issue its Order granting Defendants' Judgment as a Matter of Law on all of Plaintiff's remaining claims.

Respectfully submitted,

SHUGHART, THOMSON & KILROY, P.C.

By:  /s/ Karen R. Glickstein

KAREN R. GLICKSTEIN          #37083
MONICA M. FANNING            #50511
120 W. 12th St., Suite 1700
Kansas City, MO 64105
(816) 421-3355
(816) 374-0509-Facsimile

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of March, 2002, the above and foregoing document was electronically filed, and a true and correct copy was hand-delivered to:

Kirk D. Holman
Michael D. Fletcher
SANDERS, SIMPSON, FLETCHER & SMITH, L.C.
1125 Grand Ave., Suite 1400
Kansas City, MO 64106

ATTORNEYS FOR PLAINTIFF

 /s/ Karen R. Glickstein
Attorneys for Defendants

1178110.1