IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| MICHAEL THORNE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 00-0913-CV-W-HFS |
|  | ) |  |
| SPRINT/UNITED MANAGEMENT COMPANY, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**ORDER**

After a week-long trial, a jury awarded Plaintiff a verdict on one of his two claims against defendants, Sprint/United Management Company and Sprint Spectrum, L.P. (collectively "defendant," or "Sprint"). Plaintiff alleged a hostile work environment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 200e, et seq., and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 et seq. The jury found in favor of defendant on the hostile work environment claim, and in favor of plaintiff on his retaliation claim. It awarded plaintiff $2,850 for bonus losses, $100,000 for emotional distress, and $1.1 million in punitive damages. Defendant has now renewed its motion for judgment as a matter of law. Alternatively, defendant seeks a new trial on plaintiff's retaliation claim or remittitur of the damage awards.

**I.  Motion for Judgment as a Matter of Law**

On a motion for judgment as a matter of law, a court must "assume as proven all facts the nonmoving party's evidence tended to show, resolve all conflicts in favor of the nonmoving party, and draw all reasonable inferences in favor of the nonmoving party." Jones v. Fitzgerald,

285 F.3d 705, 712 (8th Cir. 2002) (citations omitted). Judgment as a matter of law will be granted only when there is no legally sufficient evidentiary basis for a reasonable jury to find for the verdict winner. Id. (quoting Fed. R. Civ. P. 50(a)(1)).

Defendant points to a number of evidentiary issues to support its assertion that the evidence does not support a verdict in favor of plaintiff on the retaliation claim; however, there does not appear to be a situation which would warrant a judgment in its favor. While much of the evidence pointed to was controverted, the jury was, of course, entitled to credit the testimony and evidence in favor of the plaintiff. Additionally, I am satisfied that more than the minimum amount of evidence existed to support plaintiff's version of the facts. Accordingly, the jury's decision as to liability for retaliation should stand; particularly in light of the fact that no transcript of the proceedings has been submitted in support of defendant's contentions.

Additionally, I believe plaintiff's punitive damages claim was correctly submitted to the jury. Punitive damages are available if an employer engaged in intentional discrimination with "malice or reckless indifference to the [plaintiff's] federally protected rights." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999) (citation omitted). The terms "malice" and "reckless indifference" pertain to "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Id. Malice may be imputed to the employer if the employee who committed the act was serving in a "managerial capacity" and "acting in the scope of employment." Id. at 543 (citation omitted).

Sprint does not dispute that the individuals responsible for denying plaintiff his personal performance bonus were managers acting within the scope of their employment. It does contend that there is no evidence of malice or reckless indifference in this case. Sprint argues that the

2

decision to deny plaintiff his bonus was based solely on performance deficiencies and was not in retaliation for his complaints of sexual harassment. This argument relates to whether Sprint's proffered reason for the denial of plaintiff's bonus was pretextual. While it is relevant to defendant's contention that the court should not have submitted the retaliation claim to the jury, it is not applicable here. In response, however, I note that disparate testimony at trial concerning Bob Brown's acquiescence in the ultimate zero payout result, the Orlando meeting and the changing of the LINK rating[1] created an issue of fact for the jury to resolve regarding plaintiff's retaliation claim. Failure to submit this claim would have constituted error.

I turn now to the issue of punitive damages. With regard to whether Sprint acted with malice or reckless indifference (i.e. whether it retaliated in the face of a "perceived risk that its actions [would] violate federal law," id. at 536), this element is satisfied by evidence that the relevant individuals knew of or were familiar with the antidiscrimination laws and the employer's policies for implementing those laws. See, e.g., Ogden v. Wax Works, Inc., 214 F.3d 999, 1010 (8th Cir. 2000) (finding that the jury could reasonably conclude that a supervisor acted in the face of a perceived risk that his actions would violate federal law when he testified that he was familiar with his employer's antidiscrimination policy); Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 443 (4th Cir. 2000) (finding sufficient evidence to support the jury's award of punitive damages where the discriminating manager presumably knew of federal

---

[1] While it ostensibly had no effect on the payout of his personal bonus, the jury was entitled to negatively weigh the evidence involving the change to plaintiff's LINK review – despite defendant's assertion to the contrary, such conduct could easily be construed as an attempt to misrepresent plaintiff's performance for the year in order to make the denial of the bonus more credible. The jury could easily infer, moreover, that Hammond learned of the remarkable complaints in Orlando, if not before, and that he was not credible in testifying otherwise. Juicy gossip frequently travels quickly.

3

antidiscrimination laws because the employer required that all managers attend a training session regarding discrimination). Defendant concedes that its anti-retaliation policy was well-publicized, contends that all employees were trained regarding this policy, and does not attempt to make the argument that the relevant individuals were not aware of federal law. The motion for judgment as a matter of law is denied.

**II.     Motion for a New Trial**

Defendant next contends that even if the court does not grant its motion for judgment as a matter of law, a new trial should be granted on plaintiff's retaliation and punitive damages claims. The court can disturb a jury verdict only to prevent a "miscarriage of justice." White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992). For the court to grant a new trial, the jury's verdict must go against the "great, clear, or overwhelming weight of the evidence." Frumkin v. Mayo Clinic, 965 F.2d 620, 624 (8th Cir. 1992) (internal citations and quotations omitted). Moreover, the court is not "free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions." White, 961 F.2d at 780.

Defendant first asserts that the court's punitive damages jury instruction was improper and constitutes grounds for a new trial. Specifically, Sprint challenges the court's decision to exclude from the jury instructions the defense recognized in Kolstad that insulates an employer from punitive damages liability if it has made "good faith efforts to enforce an antidiscrimination policy." 527 U.S. at 546. As evidence of Sprint's good faith attempt to comply with Title VII, defendant points to Sprint's written anti-retaliation policy, as well as testimony that Sprint employees were trained regarding this policy.[2] However, the mere existence of a formal policy is

---

[2] I again note the failure to submit a transcript in support of this contention.

4

not sufficient to establish good faith if there is evidence that managerial employees disregarded it in making employment decisions and issued a conflicting policy.  Ogden, 214 F.3d at 1010; see also Lowery, 206 F.3d at 446 (written anti-discrimination policy does not automatically establish good faith enforcement); Bruso v. United Airlines, 239 F.3d 848, 858 (7th Cir. 2001) ("Every court to have addressed this issue thus far has concluded that, although the implementation of a written or formal antidiscrimination policy is relevant to evaluating an employer's good faith efforts at Title VII compliance, it is not sufficient in and of itself to insulate an employer from a punitive damages award.").  In this case, there was evidence that Sprint did not have effective procedures in place to protect employees from retaliation.  For instance, John Yuzdepski informed the alleged harasser of plaintiff's complaints shortly after he learned of them himself.  Bob Brown requested that plaintiff accompany Brown and the alleged harasser on an overnight business trip the day after plaintiff approached him concerning the sexual harassment complaints.  Additionally, several higher-up Sprint employees, charged with the responsibility of handling Title VII complaints, were involved in the delayed alteration to plaintiff's LINK rating.  Defendant's formal policy on retaliation does not suffice to establish good faith efforts when viewed in conjunction with the above-noted evidence.[3]

Defendant also contends that several evidentiary rulings were incorrect.  With regard to plaintiff's comments about the MCI-World Com merger and his testimony concerning the 1987 incident, defendant has failed to demonstrate prejudice as a result of the alleged evidentiary

---

[3]Because the legal obligation to "turn the other cheek" is so contrary to human nature, particularly where, as here, significant executives are involved, only a forceful and dramatic training program is likely to succeed.  Whatever credit Sprint was entitled to for its paper program and evidence, if any, regarding training the executives in question, could be, and perhaps was, argued to the jury—along with other pertinent issues relating to punitive damages.

5

errors. With regard to the changing of plaintiff's LINK review, this evidence, as explained above, was relevant despite the fact that it apparently had no effect on the payout of plaintiff's personal bonus for the year. Belated manipulation, if found by the jury, helps evidence motivation.

Finally, defendant urges this court to grant the motion for a new trial because the damages awarded in this case are excessive and unsupported by the evidence. I agree. However, plaintiff will be given the option of avoiding the delay and expense of a new trial by agreeing to remittitur of the excessive portion of the damage award. See Transclean Corp. v. Bridgewood Servs., Inc., 2001 U.S. Dist. LEXIS 24383, *73 (Dist. Minn. Jan. 8, 2001) (citing Unisplay, S.A. v. Am. Elec. Sign Co., Inc., 69 F.3d 512, 519 (Fed. Cir. 1995)).

### III. Remittitur

Remittitur is used when a damage award is so excessive that it shocks the conscience of the court. Triton Corp. v. Hardrives, Inc., 85 F.3d 343, 347 (8th Cir. 1996). In this case, the jury's verdict awarded plaintiff $2,850 for bonus losses, $100,000 for emotional distress, and $1.1 million in punitive damages. For the reasons stated in this order, the award of $100,000 in compensatory damages for mental trauma, and $1.1 million in punitive damages is highly excessive under the circumstances. Defendant's request for remittitur will be granted.

#### A. Damages for Emotional Distress

Plaintiff submitted competent evidence of emotional distress. He testified that his problems at work caused him to withdraw from his friends and family. Plaintiff's wife corroborated his claims of anxiety and depression. The testimony of plaintiff and his wife, alone, are sufficient to support an award of damages for emotional distress. See, e.g., Delph v. Dr.

6

Pepper Bottling Co. of Paragould, Inc., 130 F.3d 349, 357 (8th Cir. 1997). In addition, plaintiff submitted medical and expert evidence of his mental distress. Cf. Kim v. Nash Finch Co., 123 F.3d 1046, 1065 (8th Cir. 1997) (holding that medical or expert evidence is not required to prove emotional distress damages under Title VII).

Defendant argues, however, that the $100,000 in damages awarded to plaintiff for mental trauma bear no reasonable relationship to his alleged injury. It notes that the jury found no evidence of sexual harassment, therefore, plaintiff may only recover for pain and suffering related to his claim for retaliation.

Defendant's point is well-taken. Because the jury found for defendant on plaintiff's sexual harassment claim, the $100,000 award should be supported on the evidence of injury related to the retaliation claim alone. See, e.g., Hammond v. Northland Counseling Ctr., Inc., 218 F.3d 886, 893 n.8 (8th Cir. 2000); Vadie v. Mississippi State Univ., 218 F.3d 365, 376 (5th Cir. 2000). However, aside from expert testimony concerning Post Traumatic Stress Disorder, the evidence of pain and suffering at trial was not allocated between mental trauma stemming from the alleged sexual harassment and mental trauma stemming from defendant's retaliatory behavior.[4] Moreover, the jury was instructed that if it found in favor of plaintiff on his retaliation claim, it was to compensate him for damages sustained "as a direct result of retaliation." (ECF doc. 108, Instruction N). This court should and does assume that the jury tried to follow this

---

[4]If other factors accounted for plaintiff's pain and suffering, then defendant bears the burden of proving that those factors are divisible from the harm caused by the retaliation. See Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1292-94 (8th Cir. 1997); Herndon v. Wm. A. Straub, Inc., 17 F. Supp. 2d 1056, 1061-62 (E.D. Mo. 1998). Defendant's only effort to meet this burden consisted of vague references to trial testimony. As noted above, no transcript was submitted; incidentally, there were no citations to the record that might support defendant's arguments.

7

instruction.  Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("juries are presumed to follow their instructions."); Gray v. Bowersox, 281 F.3d 749, 758 (8th Cir. 2002) ("we routinely assume that juries follow the court's instructions.").

I also find, however, that the award was excessive.  Although plaintiff clearly proved that he suffered emotional distress as a result of his experiences at Sprint, he did not present evidence sufficient to support $100,000 worth of suffering caused by retaliation.  For instance, in Delph v. Dr. Pepper Bottling Co. of Paragould, Inc., 130 F.3d 349 (8th Cir. 1997), the court characterized plaintiff's complaints as vague, ill-defined and not "especially intense."  Id. at 358.  It held that testimony from plaintiff and his wife that he and suffered headaches and stomachaches, and was "withdrawn" and "upset," only warranted a compensatory damage award of $50,000.  Id; see also Foster v. Time Warner Entm't Co., L.P., 250 F.3d 1189, 1196 (8th Cir. 2001) (affirming award of $75,000 where plaintiff's husband testified that she became withdrawn, could not eat, experienced back pain, muscle stress, and stomach problems, but did not seek medical treatment or have difficulty in finding another job).  I had occasion to review this issue quite closely in Morse v. Southern Union Co., 38 F.Supp.2d 1120, 1126-7 (W.D.Mo. 1998).  In that case I reduced an emotional injury claim for termination of an aging career employee from $450,000 to $70,000, and noted that in the 7th Circuit there had been a 50% remittitur for a $21,000 emotional trauma award in a more routine termination case.  While I doubt that the 8th Circuit would be quite as chintzy as Judge Posner (although Judge Bright was on the panel and acquiesced) it does seem that a $30,000 award would approach the limits for simple limitation of a bonus, although reputational issues were involved.  This is especially true here, where one can only suppose that plaintiff's psychic upset would be more connected with what he perceived to be a supervisor's

8

unwanted sexual advances than it would be related to the bonus denial, even though connected with job performance. It will be observed that plaintiff sought another job, and landed on his feet financially and in his career rather easily.

I find that plaintiff's mental suffering from retaliation could probably be soundly valued in the amount of $30,000. Accordingly, on the condition of plaintiff's acceptance of remittitur of $100,000 for that item to $30,000, defendant's motion for a new trial on the issue of compensation for retaliation will be denied.

### B. Punitive Damages

Initially, I note that plaintiff submitted, and the court used, the federal, rather than the Missouri burden of proof for assessing punitive damages. This court has supplemental jurisdiction over plaintiff's claims under the Missouri Human Rights Act (MHRA). When a federal court exercises supplemental jurisdiction over a state law claim, it should apply state substantive law. See, e.g., Siler v. Louisville & Nashville R.R., 213 U.S. 175, 29 S. Ct. 451, 53 L. Ed. 753 (1909); Fogelbach v. Wal-Mart Stores, Inc., 270 F.3d 696, 698 (8th Cir. 2001) (diversity jurisdiction); Lundgren v. McDaniel, 814 F.2d 600, 605 (11th Cir. 1987). Consequently, Missouri substantive law should control the MHRA claim, including the proper burden of proof for recovery of punitive damages. See Am. Eagle Ins. Co. v. Thompson, 85 F.3d 327, 330 (8th Cir. 1996) (noting that the proper burden of proof is an issue of substantive law).

Under Missouri law, the facts required for the recovery of punitive damages must be proven by clear and convincing evidence. See MAI 3.01 (6th ed. 1998); Rodriquez v. Suzuki Motor Corp., 936 S.W.2d 104, 111 (Mo. 1996); Gray v. Tyson, 46 F. Supp. 2d 948, 957 (W.D. Mo. 1999); Morse v. Southern Union Co., 38 F. Supp. 2d 1120, 1126 (W.D. Mo. 1998). In this

9

case, the court, with no objection by plaintiff, instructed the jury to award punitive damages if it found, "by the greater weight of the evidence," that defendant acted with malice or with reckless indifference to plaintiff's right not to be retaliated against for complaining of sexual harassment. Instruction O. In other words, the federal, rather than the Missouri, standard was elected by plaintiff and was used. See Eighth Circuit Manual of Model Jury Instructions, Civil 5.04 (2001) (characterizing plaintiff's burden of proof on punitive damages in a Title VII action as "the preponderance or greater weight of the evidence" standard). Plaintiff may, by mutual consent, procure an award of exemplary damages pursuant to Title VII. Id. However, Title VII's statutory cap applies, and plaintiff may not recover more than $300,000 in punitive damages. 42 U.S.C. § 1981a(b)(3)(D).

Defendant also contends, however, that $300,000 is excessive in light of the evidence, and requests that the court remit the jury's award below the statutory cap. In determining the reasonableness of a punitive damages award, the court examines three factors: (1) the degree of reprehensibility of defendant's conduct; (2) the ratio between the actual harm inflicted on plaintiff and the punitive damages award; and (3) the difference between this punitive damages award and the civil sanctions that are authorized or imposed in comparable cases. Kim v. Nash Finch Co., 123 F.3d 1046, 1068 (8th Cir. 1997) (citing BMW of North Am., Inc. v. Gore, 517 U.S. 559, 575 (1996)).

$300,000 approaches ten times the award of actual damages. Courts have upheld greater or similar punitive damage ratios for retaliatory conduct. See, e.g., Kim, 123 F.3d at 1068 (upholding a $300,000 punitive damages award for retaliation where the jury had awarded $100,000 for emotional distress); Shea v. Galaxie Lumber & Constr. Co., 152, 729, 736 (7th Cir.

10

1998) (upholding $9,100 punitive damage award for retaliation where the jury had awarded no compensatory damages); see also USA v. Big D. Enter., Inc., 184 F.3d 924, 933-34 (8th Cir. 1999) (upholding an award yielding a 100 to 1 ratio of punitive to compensatory damages in a race discrimination case); Storlie v. Rainbow Foods Group, Inc., 2002 WL 46997 (D. Minn. Jan. 9, 2002) (finding that a 5 to 1 ratio of punitive to compensatory damages was not unreasonable in a sexual harassment case).  I am not satisfied that there is a sound formula for punitive damages, although the Congressional use of double damages and treble damages suggests some caution in the routine case.

That being said, Sprint's conduct as found by the jury was reprehensible and involved at least reckless disregard of plaintiff's federally protected right not to be retaliated against. Moreover, there is at least some evidence of deceit in the changing of the LINK rating. Nevertheless, cases upholding significant punitive damage awards involve facts more egregious than those presented here.  See Kim, 123 F.3d at 1067 (upholding a punitive damages award of $300,000 where defendant "systematically" retaliated against plaintiff by eliminating his duties, excluding him from meetings, papering his personnel file with negative performance evaluations and forcing him to attend remedial retraining); Zimmerman v. Direct Federal Credit Union, 262 F.3d 70, 82 (1st Cir. 2001) (upholding a punitive damages award of $400,000 where defendants "mounted a deliberate, systematic campaign to punish plaintiff in retaliation for her attempt to lodge a discrimination claim").

The BMW Court identified "aggravating factors" that should be associated with reprehensible conduct and noted that "some wrongs are more blameworthy than others."  BMW, 517 U.S. at 575-76.  The primary aggravating factor – violence or a threat of violence – is not

11

present here. See id. In addition, no evidence has been presented that Sprint engaged in repeated acts of misconduct with respect to plaintiff or other employees.[5] See id. at 577 ("repeated misconduct is more reprehensible than an individual instance of malfeasance."). Furthermore, while my decision reflects the jury's apparent belief that the changing of plaintiff's LINK rating was an act of "trickery or deceit" on the part of higher-up Sprint officials, as noted by defendant, this conduct did not ultimately affect plaintiff's bonus payout. Compare Greenbaum, 67 F. Supp. 2d at 270 (noting defendant's attempt to retaliate against plaintiff in a "deceitful manner" by moving her to a position that would later be phased out for seemingly extrinsic reasons). Finally, the retaliation that plaintiff was found to have suffered was not severe. While plaintiff was denied a bonus totalling $2850, he was not terminated and offered no evidence of long-term damage to his professional reputation. Compare Iannone v. Frederic R. Harris, Inc., 941 F.Supp. 403, 414 (S.D.N.Y. 1996) (noting that defendant's retaliatory conduct was "severe" where plaintiff "lost her livelihood").

When reviewing the reasonableness of a damage award, it is important to keep in mind the principle purpose of punitive damages, which is to punish the defendant and to deter it and others from similar conduct in the future. Drabik v. Stanley-Bostich, Inc., 796 F.Supp. 1271, 1273 (W.D. Mo. 1992) (quoting Douglass v. Hustler Magazine, Inc., 769 F.2d 1128, 1145 (7th Cir. 1985) (Posner, J.). Deterence of a major corporation requires large enough recovery to get its attention. Even though the retaliatory conduct was implicitly found to be aggravated by false

---

[5]Plaintiff's testimony concerning the 1987 incident is unsubstantiated and too far removed. Consequently, it is not a factor in my determination with regard to any alleged repeated acts of misconduct.

testimony regarding the Orlando meeting, I believe an award of $200,000 will adequately serve to punish what has occurred and deter its repetition.

**III.   Conclusion**

For the foregoing reasons, it is hereby

ORDERED that defendant's Renewed Motion for Judgment as a Matter of Law (ECF doc. 113) is DENIED. It is further

ORDERED that defendant's Motion for Remittitur (ECF doc. 113) is GRANTED. If, within 14 days, plaintiff accepts the remittitur of compensatory damages for emotional injury to $30,000, and of punitive damages to $200,000, defendant's motion for a new trial (ECF doc. 113) is DENIED. Acceptance of remittitur must be in writing, signed by plaintiff and his counsel, and filed with the Clerk of the Court. If plaintiff does not accept the ordered remittitur, defendant's Motion for a New Trial will be granted.

/s/ Howard F. Sachs  
HOWARD F. SACHS  
UNITED STATES DISTRICT JUDGE

November 19, 2002

Kansas City, Missouri